**Samuel LAW, Petitioner,**

v.

**J. D. COX, Superintendent, Virginia State Penitentiary, Respondent.**

**Civ. A. No. 70–C–35–D.**

United States District Court,
W. D. Virginia,
Danville Division.

June 7, 1971.

Daniel L. Manson, Martinsville, Va., for petitioner.

William P. Robinson, Jr., Asst. Atty. Gen., Richmond, Va., for respondent.

OPINION and JUDGMENT

DALTON, District Judge.

This cause is before the court upon a petition for a writ of habeas corpus and the respondent's motion to dismiss the petition. The petitioner attacks convictions rendered against him in the Corporation Court of the City of Danville on August 4 and September 19, 1966 for the crimes of kidnapping and sodomy, respectively. He alleges that the convictions are constitutionally defective on the grounds a) that he was subjected to an illegal arrest in that he was taken to the police station without a warrant, b) that he received ineffective representation by counsel, and c) that he was denied a fair and impartial trial.

These contentions have been presented to the Supreme Court of Appeals of

Virginia, which denied the petition. Concluding that the exhaustion of state remedies requirement of 28 U.S.C.A. § 2254 had been satisfied, this court set the matter down for a hearing and appointed counsel to represent the petitioner.

■■ Although the court allowed the petitioner to present evidence concerning the circumstances surrounding his arrest, this testimony was actually relevant only insofar as it related to the counsel's ineffectiveness in not raising the issue. An illegal arrest per se is not an issue cognizable in a federal habeas corpus proceeding because it does not affect the actual fairness of the trial itself. *See* United States ex rel. Orsini v. Reincke, 286 F.Supp. 974 (D.Conn.), aff'd 397 F. 2d 977 (2nd Cir. 1968), cert. denied, 393 U.S. 1050, 89 S.Ct. 689, 21 L.Ed.2d 692 (1969). It is interesting to note, however, that even by the petitioner's own testimony no illegal arrest was committed. Law testified that Lt. Elliott, a detective with the Danville Police Department, came to the location where the petitioner worked and told him that a serious charge had been made against him. Lt. Elliott asked him if he would come to the police station and Law agreed to do so. Law stated that he was not told that he was under arrest and that he went to the police station voluntarily. He was not actually placed under arrest until some time later at the station by which time a warrant had been issued. Clearly the arrest was proper.

At the trials in question, two attorneys were appointed to represent the petitioner. One of these attorneys had been practicing law since 1919 and had served for a number of years as Assistant Commonwealth Attorney with extensive criminal trial experience. The second attorney had been practicing law approximately eight years with a significant portion of his time having been spent in defending persons accused of crime. Both of these attorneys were called by the respondent to testify as to their recollection of the criminal proceedings.

Law stated at the hearing that he had three meetings with his attorneys before trial. He gave to the attorneys the name of his niece, Shirley Ann Adams, to call as an alibi witness to the effect that he had been home asleep at the time of the alleged crime. As a matter of fact, the niece testified for the Commonwealth to the effect that the defendant had been absent from home on part of the night in question. The attorneys testified that they had gone into the matter thoroughly and had interviewed all of the potential witnesses. Since there were no witnesses helpful to the petitioner, counsel attempted to break down the credibility of the complaining witness by showing that he had only been recently released from a mental hospital. In response to this tactic, however, the Commonwealth Attorney presented a certificate indicating the witness to be then mentally competent and healthy.

■ The petitioner actually advanced only two instances which allegedly demonstrate ineffectiveness of counsel. The first of these is that counsel failed to perfect the appeal which Law desired. This contention was considered by the Corporation Court of the City of Danville in a petition for a writ of habeas corpus and the court found that the petitioner had been denied his right of appeal. Another attorney, who was requested by the petitioner, was appointed to undertake an appeal. The appeal was denied on the merits by the Supreme Court of Appeals of Virginia. Accordingly, this defect has been cured and the petitioner cannot again rely on it in this proceeding.

■ The second alleged lapse involved a failure to make a timely objection to the closing argument of the Commonwealth Attorney. During the trial the defendant had taken the stand and it was brought out that he had been previously convicted of other felonies. The Commonwealth Attorney in his closing argument made mention of the fact that the defendant was a "convicted felon" but defense counsel made no objection at the time. In their motion to set aside the verdict counsel raised this point as justification for granting of the motion. Although the trial judge noted that the ob-

jection was untimely, he also remarked that he didn't think the argument was improper anyway. Since it was permissible to bring out in evidence Law's status as a felon as bearing on his credibility, this court also sees no great impropriety in this remark. The Commonwealth's Attorney did not belabor the point or imply that the jury should use this circumstance as an indication of guilt. Certainly this occurrence does not indicate inadequacy of counsel.

It is enough to say that the evidence introduced before the court indicates that, except for the situation with regard to the belated appeal, the attorneys appointed to represent the petitioner did all that could reasonably be asked to protect his interests. A reading of the original trial transcript indicates a vigorous representation of the defendant and a strong effort to win his acquittal. The transcript also indicates that the case against the defendant was overwhelming and that a jury would probably have been derelict in its duty if it had not returned a verdict of guilty.

■ Petitioner's final contention that he was denied a fair trial is primarily based on his complaint that evidence of the crime of sodomy was introduced into the kidnapping trial. The trial judge admitted the evidence on the ground that it indicated the motive for the kidnapping. As a practical matter it would have been difficult to exclude the testimony regarding sodomy because the crimes were so interrelated. The evidence revealed that the defendant was standing behind some bushes as the victim was walking home from the bus station. The accused then jumped or accosted the victim and by holding a knife to his throat forced him to enter a building to which he had a key. Once inside the building the victim was forced to submit to unnatural sexual acts and then allowed to leave. Although the acts making the defendant guilty of kidnapping had been accomplished before the acts constituting sodomy had occurred, evidence of the latter crime was relevant and necessary to show the jury the full

situation which existed. The court has considered carefully both the petitioner's testimony before this court and also the original trial transcript and it concludes that the defendant did receive a fair and impartial trial consonant with established constitutional principles.

For the reasons discussed in this opinion, the petition for a writ of habeas corpus is without merit and, accordingly, is dismissed. The court expresses appreciation to the attorneys in this case for their excellent presentations.

If the petitioner wishes to appeal this judgment or any part thereof, he should file within 30 days a notice of appeal with the clerk of *this* court. Failure to file notice of appeal within 30 days may result in a denial of the right of appeal. The notice of appeal shall state the following:

a) the judgment, order, or part thereof appealed from;

b) the party or parties taking the appeal; and

c) the court (United States Court of Appeals for the Fourth Circuit) to which the appeal is taken.